IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HUSKY VENTURES, INC., <br><br> PLAINTIFF, <br><br> V. <br><br> B55 INVESTMENTS LTD.; AND CHRISTOPHER MCARTHUR, AN INDIVIDUAL, <br><br> DEFENDANTS. | CASE NO. CIV-15-93-F <br> (Formerly Case No. CJ-2015-2, <br> Kingfisher County District Court) |

**PLAINTIFF, HUSKY VENTURES, INC.'S, BRIEF MEMORANDUM IN SUPPORT OF ITS REQUEST FOR THE COURT'S ISSUANCE OF A <u>PERMANENT INJUNCTION AGAINST DEFENDANTS</u>**

Plaintiff, Husky Ventures, Inc. ("Husky"), for its Brief Memorandum in Support of its Request for the Court's Issuance of a Permanent Injunction Against Defendants, B55 Investments Ltd. ("B55") and Christopher McArthur ("McArthur") (collectively "Defendants"), respectfully requests that this Court issue a permanent injunction, prohibiting Defendants from having any future contact with Husky's participants and service providers, in accordance with the jury's verdict in this case. In support thereof, Husky respectfully shows this Court as follows:

**INTRODUCTION**

Nearly two years ago, Husky filed this case to put an end to Defendants' meddlesome communications with Husky's business participants and service providers. In its January 2015 Petition, Husky asked the Court to issue a permanent injunction to prohibit Defendants from continuing their communications which were causing

irreparable harm to Husky. Rather than ceasing their communications, Defendants intensified their efforts which eventually resulted in further tortious interferences with Husky's business and contractual relationships, causing both quantifiable and unquantifiable damage.[1]

After being presented with the evidence of Defendants' tortious conduct at trial, the jury found in favor of Husky on all claims, including its primary claim for tortious interference with business and contractual relationships. In addition to actual damages for tortious interference, the jury also imposed punitive damages against McArthur to punish him for such conduct and as a deterrent to him and others from engaging in this type of misconduct in the future. Therefore, the Court should now grant Husky its final request for relief, which is to enter a permanent injunction against Defendants to prohibit them from continuing to communicate and interfere with Husky's business and contractual relationships including, but not limited to, those relationships with the following: 1) Schlachter Operating Corporation; 2) Danial Investments LP; 3) Torchlight Energy Resources, Inc.; 4) TripleK Oil & Gas, Inc.; 5) Noble Americas Corp.; 6) US Energy Development Corp.; 7) Unit Drilling Co.; 8) Consolidated Oil Well Services, LLC; 9) LaMunyon Drilling, LLC; 10) Weatherford International, Inc.; and 11) CrossFirst Bank.

---

[1] As proven at trial, these damages included the filing of oil and gas liens against Husky's wells by LaMunyon Drilling, Gastar's intervention in this case to remove Husky as operator and subsequent forced settlement and sale of assets, and the filing of a lawsuit by Torchlight against Husky in Texas in violation of an express release of claims by Torchlight in favor of Husky.

## ARGUMENT AND AUTHORITIES

**I. THE JURY'S FACTUAL FINDINGS SHOULD BE APPLIED BY THIS COURT IN GRANTING EQUITABLE RELIEF TO HUSKY IN THIS CASE.**

Now that the jury has reached their verdict, it is exclusively within the province of the Court to grant Husky the equitable relief it seeks to prevent Defendants from continuing to communicate with Husky's participants and service providers. In a case such as this involving both legal and equitable claims, the Court must apply the jury's factual findings in ruling on the equitable claims. The Tenth Circuit has stated:

> [W]hen a party joins legal claims [to an equitable action], the party does not waive the right to a jury trial on those legal claims. Moreover, that right "must be preserved by trying the legal claims first (or at least simultaneously with the equitable claims), and the **jury's findings on any common questions of fact must be applied when the court decides the equitable claims.**"

*Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1222 (10th Cir. 2013) (emphasis added). "[I]n fashioning equitable relief, a district court is bound both by a jury's explicit findings of fact and those findings that are necessarily implicit in the jury's verdict." *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912–13 (10th Cir. 2004); *Berger v. SSM Health Care of Oklahoma, Inc.*, Case No. CIV-14-872-D, 2015 WL 2455459 at *1 (W.D. Okla. May 22, 2015).

In this case, the jury necessarily made the following factual findings against both B55 and McArthur since they found in favor of Husky on its tortious interference claim against both Defendants:

1. That the interference by the defendant in question was with a contractual or business right of Husky;

2. That such interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable; and

3. That damage was sustained by Husky as a result of such interference.

(*See* Court's Jury Instructions [Doc. 221], p. 18). The jury also found by clear and convincing evidence that the actions of both Defendants were in "**reckless disregard of the rights of [Husky] and were taken <u>intentionally and with malice</u> towards [Husky]**." (*See* Jury's Verdict Form [Doc. 229], p. 2-3) (emphasis added).

These factual findings, especially on the heightened "clear and convincing" standard along with the punitive damages finding against McArthur, indicates that the jury sought to put an end to Defendants' tortious interferences with Husky's business and contractual relationships. However, only this Court can issue the injunction to prevent any such further communications after the jury's verdict. Therefore, this Court should grant Husky the equitable relief it seeks and issue a permanent injunction to bar Defendants from having any further contact with Husky's participants and service providers.[2]

## II. THIS COURT SHOULD ISSUE A PERMANENT INJUNCTION SINCE ALL NECESSARY ELEMENTS HAVE BEEN SATISFIED.

"A party requesting a permanent injunction bears the burden of showing: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party;

---

[2] This permanent prohibition on communications of any type should also bar Defendants from contacting Husky's banking institutions and other sources of financing as Defendants' own testimony at trial revealed that Defendants reached out to Husky's banks in an attempt to glean information about Husky's financial status and affairs.

and (4) the injunction, if issued, will not adversely affect the public interest." *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003); *see also Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007). As shown below, all of these elements have been satisfied and, thus, this Court should issue a permanent injunction to bar Defendants from having any further contact with Husky's participants and service providers.

### A. Husky Was Successful on the Merits of its Tortious Interference Claim at Trial.

As shown above, the first element required for issuance of a permanent injunction is "actual success on the merits." *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d at 1180; *see also Colfax v. JPmorgan Chase Bank, N.A.*, Case No. 14-CV-760-GKF-PJC, 2015 WL 3620987 at *3 (N.D. Okla. June 9, 2015). In this case, the jury found in favor of Husky on its tortious interference claim against both Defendants. (*See* Jury's Verdict Form [Doc. 229], p. 1). Therefore, there can be no dispute that Husky was "actually successful" on the merits of its tortious interference claim against both Defendants at trial. Thus, the first element for issuance of a permanent injunction has clearly been satisfied.

### B. Husky Will Suffer Further Irreparable Harm Unless a Permanent Injunction is Issued by this Court.

The second element necessary for the granting of a permanent injunction is whether irreparable harm will be suffered if an injunction is not granted. *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d at 1180. Injury is "irreparable" when

> **it is incapable of being fully compensated by money damages, or where the measure of damages is so speculative that arriving at an amount of damages would be difficult or impossible**.

*Angier v. Mathews Expl. Corp.*, 1995 OK CIV APP 109, ¶8, 905 P.2d 826, 830 (emphasis added) (analyzing factors for permanent injunction). Under this standard, Husky will suffer further irreparable harm under either test if a permanent injunction is not issued.

As shown by the testimony and documentary evidence introduced at trial, Defendants' efforts to interfere with Husky's business is not—and has not been—limited to communications with one or two participants or service providers. Rather, McArthur cast a wide net and contacted as many participants and service providers as possible in an effort to undermine Husky's contractual and business relationships. Those communications continue to this very day, evidenced in one instance by McArthur's champertous and unenforceable "Common Interest Agreement" with Torchlight. (*See* Husky's Supplemental Brief to its Motion to Compel Non-Party Torchlight Energy Resources, Inc. [Doc. 150]). A permanent injunction is necessary to put an end to such communications.

Despite Defendants' statements at trial that they were trying to "help" Husky, it is clear that Defendants' numerous communications with Husky's participants and service providers serve only one purpose: to tortiously interfere with Husky's relationships for Defendants' own financial gain. If Defendants are allowed continue their interference with Husky's business and contractual relationships—which they are likely to do given their total lack of remorse—they could achieve their stated goal of destroying Husky. There is no amount of money that could compensate Husky for such a result, as it has

taken over twenty (20) years to build Husky into the company it is today. Thus, there is no amount of money that could compensate Husky for such a result, and the element of "irreparable harm" under the first test is met.

Secondly, the future value of Husky's company, including all of its oil and gas leasehold and dozens of producing and planned wells, is difficult or even impossible to predict since it is dependent, at least in part, on the volatile price of commodities and Husky's success in drilling future wells. As the recent oil and gas bust in Oklahoma has proven, the valuation of oil and gas companies and their assets can change drastically within a matter of months. Therefore, attempting to place a value on the damages Husky would suffer in the future due to Defendants' continued tortious interference is so speculative that it would be difficult or impossible to predict.[3] Therefore, under either test for "irreparable harm" under Oklahoma law, the second element necessary for a permanent injunction has been satisfied as well.

### C. The Balancing of Harms Greatly Favors Issuance of the Permanent Injunction Against Defendants.

The third element is a balancing test, requiring that the threatened injury to be suffered in the absence of an injunction outweighs the harm which may be caused to the party against whom an injunction is sought. *Fisher v. Oklahoma Health Care Auth.*, 335

---

[3] Husky could also suffer further injury to its reputation and goodwill in the Oklahoma oil and gas industry, which cannot be remedied by money damages. *See* 11A Wright & Miller, *Fed. Prac. & Proc. Civ.*, § 2948.1 ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable.") (citing *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149 (10th Cir. 2001).

F.3d at 1180; *see also Utah Envtl. Cong. v. U.S. Bureau of Land Mgmt.*, 119 F. App'x 218, 220 (10th Cir. 2004). In this case, Husky is at risk for a great amount of harm if an injunction is not granted, while Defendants will suffer little, if any, injury if an injunction is issued.

If this Court does not issue an injunction, Defendants' tortious interferences will almost certainly continue, causing even further harm to Husky's business and contractual relationships than what has already been proven to the jury at trial. Indeed, Husky is still currently being damaged by having to defend lawsuits by Torchlight, Schlachter and others caused by Defendants' tortious interferences. The threatened injury to be suffered by Husky if an injunction is not granted is substantial.

On the other hand, Defendants will suffer little, if any, harm if an injunction is granted. An injunction in this case would expressly prevent Defendants from doing something they are already prohibited from doing under the law—that is, to tortiously interfere with Husky's relationships by communicating with Husky's participants and service providers in an effort to undermine Husky's business. Therefore, the "harm" to Defendants if an injunction is issued would be *de minimus* at best. *See Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1164 (10th Cir. 2013) ("an injunction barring [the defendant] from selling [the plaintiff's] products would prevent future harm to [the plaintiff] from unlawful actions by [the defendant] without placing a significant burden on [the defendant's] interests or adversely affecting the public interest."); *see also Ojos Locos Sports Cantina LLC v. Hernandez*, Case No. CIV-13-468-C, 2013 WL 12075742 at *2 (W.D. Okla. June 20, 2013). These cases reinforce the obvious: expressly

prohibiting illegal conduct is not—and cannot be—"harmful" to Defendants.[4] Thus, the "balancing of harms" element weighs greatly in favor of issuance of a permanent injunction as well.

It also notable that Defendants do not operate any oil and gas wells in Oklahoma. Rather, the only interests they own are non-operating working interests in wells operated by Husky or Gastar. Therefore, there is no reason for Defendants to contact Husky's other participants or service providers as any information they might need could be obtained from Husky. As such, a permanent injunction will not harm Defendants in this respect either.

### D. It is in the Public's Interest to Enjoin Tortious Conduct.

The final element necessary to support the issuance of a permanent injunction is that it not be "adverse to the public's interest." *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d at 1180; *Klein-Becker USA, LLC v. Englert*, 711 F.3d at 1164. While this element is oftentimes more relevant to conduct which has a more apparent impact on the public as a whole, it is clear in this case that prohibiting Defendants from engaging in tortious—*i.e.*, unlawful—conduct is also in the public's interest.

As stated in Section II.C above, prohibiting unlawful conduct is *ipso facto* beneficial not only to the party seeking injunctive relief, but also to the general public as a whole. *Klein-Becker USA, LLC v. Englert*, 711 F.3d at 1164; *see also Ojos Locos*

---

[4] Husky anticipates that Defendants will re-urge their position that their communications with Husky's participants and service providers are "privileged" or "justified" in order to protect their investment in Husky's oil and gas prospects. However, the jury rejected this theory by their factual findings regarding the second element of tortious interference at trial. (*See* Section I, p. 4, *supra*).

*Sports Cantina LLC v. Hernandez*, 2013 WL 12075742 at *2. The jury in this case found that Defendants' actions were unlawful, and therefore, it is in the best interest of the public to prevent them from occurring again in the future. In addition, the jury imposed two million dollars ($2,000,000.00) in punitive damages to deter others from engaging in this sort of misconduct. (*See* Second Stage Jury Instructions [Doc. 226], p. 2 and Jury's Second Stage Verdict Form [Doc. 230]). As such, issuance of a permanent injunction in this case would not be adverse to the public interest, and the fourth and final element necessary for issuance of a permanent injunction has been satisfied.

## CONCLUSION

The well-known four-factor test for permanent injunctions has been met in this case. After the Court applies the jury's factual findings to each of the four elements, it becomes clear that a permanent injunction is both necessary and proper to put an end to Defendants' tortious interferences with Husky's business and contractual relationships. Therefore, for the foregoing reasons, Plaintiff, Husky Ventures, Inc., respectfully requests that this Court issue a permanent injunction, prohibiting Defendants from having any future contact with Husky's participants and service providers, in accordance with the jury's verdict in this case.

Respectfully submitted,

DATED: November 29, 2016.

By: /s/ John Paul Albert
Travis P. Brown, OBA No. 20636
Brady L. Smith, OBA No. 30727
John Paul Albert, OBA No. 31933
**MAHAFFEY & GORE, P.C.**
300 N.E. 1st Street
Oklahoma City, Oklahoma 73104-4004
tbrown@mahaffeygore.com
bsmith@mahaffeygore.com
jalbert@mahaffeygore.com
Telephone: (405) 236-0478
Facsimile: (405) 236-1840
**ATTORNEYS FOR HUSKY VENTURES, INC.**

## CERTIFICATE OF MAILING

I certify that on November 29, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Kirk Marshall, OBA #19345
kirkmarshall@msn.com
*Attorney for Defendants*

/s/ John Paul Albert
John Paul Albert